```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                                :
OTIS UTLEY,                                                     :
                                                                :
                              Petitioner,                       :
                                                                :   MEMORANDUM DECISION AND
           – against –                                          :   ORDER
                                                                :
WARDEN MARK MILLER,                                             :   23-CV-6022 (AMD)
                                                                :
                                                                :
                              Respondent.                       :
                                                                :
--------------------------------------------------------------- X
```

**ANN M. DONNELLY**, United States District Judge:

The petitioner, currently incarcerated at Green Haven Correctional Facility, was convicted of first- and second-degree robbery after a jury trial in Queens County Supreme Court. The Appellate Division, Second Department affirmed the conviction, the New York Court of Appeals denied the petitioner's application for leave to appeal on June 20, 2019, and the state courts denied the petitioner's subsequent post-judgment motions for collateral relief on September 29, 2023. The petitioner brought this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 19, 2023.

The petitioner raises claims he previously made in the state court, including that his counsel was ineffective, that the trial court should not have admitted certain evidence, and that the verdict was against the weight of the evidence. On January 25, 2024, the respondent moved to dismiss the petition as untimely. For the following reasons, the petition is dismissed.

## BACKGROUND

On September 5, 2014, the petitioner and two accomplices robbed jewelry store employees at gunpoint and stole jewelry worth $26,000. (ECF No. 13-1, Trial Transcript ("Trial Tr.") 546:9–550:15; ECF No. 12-1 at 2.) The petitioner was convicted after a jury trial of first-

and second-degree robbery.  Queens Supreme Court Justice Barry Schwartz sentenced the petitioner to concurrent, determinate prison terms of 18 years for the first-degree robbery and 10 years for the second-degree robbery, as well as concurrent five-year terms of post-release supervision.  (ECF No. 13-1 at 567–568, Transcript of Sentencing ("Tr. S.") 12:7–13:4.)

**I.      Direct Appeal**

The petitioner, through counsel, appealed his conviction to the Appellate Division, Second Department.  He claimed that the evidence was legally insufficient, the verdict was against the weight of the evidence, the trial court should not have admitted recordings of his Rikers Island phone conversations, and that his sentence was excessive.  (*See* ECF No. 13, State Record ("SR") at 1–45.)

On March 6, 2019, the Second Department affirmed the conviction.  (SR at 106–07.) The court found that the evidence was legally sufficient to establish the petitioner's guilt and that the verdict was not against the weight of the evidence, which "include[ed] the victim's in-court identification of the [petitioner]" and "DNA evidence linking the [petitioner] to the bag the victim testified he saw the [petitioner] holding during the commission of the crime."  (*Id.* at 106.) The court "agree[d] with the Supreme Court's determination admitting into evidence a recording of a telephone call the [petitioner] made during his pre-trial detention at Riker's Island."  (*Id.*) Finally, the Appellate Division rejected the petitioner's excessive sentence claim.  (*Id.* at 107.)

On June 20, 2019, the New York Court of Appeals denied the petitioner's application for leave to appeal.  (*Id.* at 115.)[1]

---

[1] The petitioner did not seek a writ of certiorari from the United States Supreme Court.

## II.    Motion for Writ of Error *Coram Nobis*

On November 13, 2019, the petitioner moved *pro se* for a writ of error *coram nobis* in the Appellate Division, Second Department, making the same claims he made on direct appeal; he also claimed that his appellate lawyer was ineffective. (*Id.* at 116–51.) On September 30, 2020, the Appellate Division denied the application, because petitioner "failed to establish that he was denied the effective assistance of appellate counsel." (*Id.* at 174.) On January 7, 2021, the Court of Appeals denied the petitioner's application for leave to appeal. (*Id.* at 184.)

## III.    N.Y. C.P.L. § 440.10 Motion to Vacate Judgment

On January 18, 2021, the petitioner moved *pro se* in Queens Supreme Court to vacate the trial court's judgment under C.P.L. § 440.10; he filed an addendum to the motion on February 20, 2021. (*See* SR at 185–98 (notice of motion and affidavit in support of the motion signed and notarized on January 18, 2021), 265–71 (addendum to the motion to vacate judgment and affidavit of service of an application for "A Reduced Filing Fee" signed and notarized on February 20, 2021).)[2] The petitioner maintained that "the judgment was procured by fraud, duress, and misrepresentation," because evidence introduced at trial was false; that "improper and prejudicial conduct occurred" during trial; that the "judgment was obtained in violation" of his constitutional rights, and that his lawyer was ineffective. (*Id.* at 187, 197.)

---

[2] The respondent refers to both dates in its opposition to the motion to vacate, but agrees that the motion was filed on January 18, 2021. (*See* SR 272 (stating that the petitioner's motion is dated January 18, 2021); *see also id.* at 278 n.2 (noting that the petitioner filed an addendum to his motion on February 20, 2021).)

On January 20, 2022, the court denied the motion on procedural grounds and on the merits. (*Id.* at 306–312.) The respondent served the petitioner with the court's order via mail on January 21, 2022. (*Id.* at 384.)[3]

### IV.    Applications for Leave to Appeal the Denial of the Motion to Vacate Judgment

On April 19, 2023, the *pro se* petitioner applied to the Appellate Division, Second Department for leave to appeal the January 20, 2022 denial of his motion to vacate the judgment. (*See* SR at 310–18.) Once again, the petitioner raised the same claims: that the trial court should have excluded evidence and testimony, that the conviction was unconstitutional, and that his counsel was ineffective. (*See id.* at 316–18, 387–90.)[4] On June 9, 2023, the Appellate Division denied the petitioner's application for a certificate of appealability, pursuant to C.P.L. § 450.15 and § 460.15. (*Id.* at 392.)

On June 30, 2023, the petitioner applied for leave to appeal to the Court of Appeals. (*Id.* at 393–95.) The respondent opposed on August 8, 2023, arguing that the order was unappealable. (*Id.* at 396–97.) On September 29, 2023, the Court of Appeals dismissed the application because "the order sought to be appealed from is not appealable." (*Id.* at 398.)

### V.    Federal Habeas Proceedings

On July 19, 2023, while his application for leave to appeal to the Court of Appeals was still pending, the petitioner filed this petition. (ECF No. 1.)

---

[3] The proof of service appears in the state record as an attachment to the respondent's opposition to the petitioner's application for leave to appeal the January 20, 2022 order. (*See* SR 340.)

[4] Although the petitioner maintained in his motion for leave to appeal that the 440.10 motion was denied on April 6, 2023 (SR at 311, 316), the record shows that the Supreme Court entered the order on January 20, 2022, and that the order was served by mail on January 21, 2022. The petitioner applied for and received a copy of that order April 6, 2023. (*Id.* at 323.)

4

Construed liberally, the petitioner raises the same claims he made in state courts: that the verdict was against the weight of the evidence, that his trial and appellate lawyers were ineffective, that the trial court's evidentiary rulings were unfair, and that his sentence is excessive. (ECF No. 1 at 5–8.)

On November 15, 2023, the Court ordered the respondent to show cause why the petition should not be dismissed as untimely. (ECF No. 7.) The respondent filed its response on January 25, 2024, and claimed that the petition was untimely and barred by the applicable statute of limitations. (ECF No. 12.) The petitioner did not respond, although the Court gave him the opportunity to do so.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the authority of federal courts to grant writs of habeas corpus to state prisoners. Section 2254(a) permits a federal court to entertain only those applications claiming violations "of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Sections 2254(b) and (c) prevent a federal court from granting the writ if the applicant has not exhausted state remedies.

A petitioner can seek federal habeas corpus relief only after he exhausts his state court remedies and gives the state court a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

Even when a petitioner has exhausted his claims, AEDPA's standards are "difficult to meet" because the Act provides a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).  Accordingly, a federal court may not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  This bar applies to substantive and procedural state law grounds alike.  *Id.* at 729–30.

As for claims that have been "adjudicated on the merits in State court proceedings," a federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Cullen*, 563 U.S. at 181 (quoting 28 U.S.C. § 2254(d)).  Federal court review "is limited to the record that was before the state court that adjudicated the claim on the merits," and "the petitioner carries the burden of proof."  *Id.* at 180–81.

When a state court "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment," "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim — even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).  For example, a state court ruling simply that a claim is "without merit" constitutes an adjudication on the merits of that claim.  *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006) (citing *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810–11 (2d Cir. 2000)).  In such a case, "the federal court will focus its review on whether the

6

state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan*, 261 F.3d at 311–12.

For the purposes of federal habeas review, "clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### I. AEDPA's One-year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a one-year limitations period "for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute provides that the limitation period runs from the latest of four possible events, which in this case is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A); *see also Clemente v. Lee*, 72 F.4th 466, 471 (2d Cir. 2023). A state judgment becomes final after "the completion of direct appellate review in the state court system" and the expiration of the 90-day period to seek certiorari at the United States Supreme

7

Court (or upon the completion of such proceedings). *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001). Accordingly, the limitations period began to run 90 days after the New York Court of Appeals ruled on the petitioner's direct appeal, because the petitioner did not seek a writ of certiorari. *See id. See also Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009) (statute of limitation began to run "90 days after the New York State Court of Appeals denied leave to appeal").

The New York Court of Appeals denied the petitioner's application for leave to appeal on June 20, 2019. Thus, the judgment became final on that date, and the one-year statute of limitations began to run 90 days later, on September 18, 2019.[5]

## II. Statutory Tolling

AEDPA's statutory tolling provision provides that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C.A. § 2244(d)(2). "A state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Clemente*, 72 F.4th at 476 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (alteration adopted). In the case of an incarcerated petitioner moving *pro se*, an application is filed on the date a petitioner gives the filing to prison officials for mailing. *See Fernandez v. Artuz*, 402 F.3d 111, 116 (2d Cir. 2005) (applying "the federal mailbox rule to ascertain when a state petition is 'properly filed' for purposes of tolling the AEDPA statute of limitations"). "And an application is '*properly* filed' when its delivery and acceptance are in

---

[5] Because the habeas petition raises each of the claims asserted in his direct appeal and subsequent applications, the limitations period applies to the entire habeas petition. *Clemente*, 72 F.4th at 471–73 (adopting a claim-by-claim approach in applying AEDPA's limitation period).

8

compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original).  Moreover, the limitations period remains tolled "between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Evans v. Chavis*, 546 U.S. 189, 191 (2006) (internal citation omitted).

In sum, each properly filed post-conviction motion pauses the AEDPA limitations period from the date an incarcerated *pro se* petitioner delivers the document to prison authorities for mailing until the last available date the petitioner has to appeal any adverse judgment under state law. *See id.*; *Clemente*, 72 F.4th at 476.  The tolling period ends once the petitioner's time to seek a discretionary appeal expires, or the highest court rules on the appeal. *See Clemente*, 72 F.4th at 476.

However, "when a postconviction petition is untimely under state law," it is not "properly filed" and "that is the end of the matter for purposes of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 7 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005)).  In addition, only applications or motions that are recognized by state law toll AEDPA's limitations period. *See Bennett*, 199 F.3d at 123 ("We therefore construe 'properly filed' to mean simply that an application for state post-conviction relief recognized as such under governing state procedures has been filed.").  AEDPA, for instance, does not "authorize tolling based on the filing of creative, unrecognized motions for leave to appeal." *Adeline v. Stinson*, 206 F.3d 249, 253 (2d Cir. 2000).  Therefore, applications or petitions that are untimely or not cognizable under state law do not toll the statute of limitations, regardless of the stated grounds of a state court decision. *See Evans*, 546 U.S. at 198 (observing that "without using a merits determination as an 'absolute bellwether' (as to timeliness), the federal court must decide whether the filing of the request for

9

state-court appellate review (in state collateral review proceedings) was made" in compliance with the state's laws).

    **a.**    **Tolling Periods**

        *i.*    *The writ of error coram nobis motion and the subsequent appeal*

The petitioner properly filed a *pro se* motion for a writ of error *coram nobis* on November 13, 2019, tolling the statute of limitation from that date. (SR at 116; 117–51.) At that point, 56 days had passed since the Court of Appeals ruled on the direct appeal; and there were 309 days left in the AEDPA limitations period. On September 30, 2020, the Appellate Division, Second Department denied the motion. (*Id.* at 174.) On November 3, 2020, the petitioner sought a certificate of appealability from the Court of Appeals, which denied his application on January 7, 2021. (*Id.* at 175–78, 184.)

New York Criminal Procedure Law § 450.90 allows a petitioner to seek a certificate of appealability from the Court of Appeals when the Appellate Division denies of a petition for writ of error *coram nobis* alleging ineffective assistance of counsel. N.Y. Crim. Proc. Law § 450.90(1). A petitioner must request the certificate from the Court of Appeals "[w]ithin thirty days after service upon the appellant of a copy of the order sought to be appealed." *Id.* § 460.10(5)(a). Accordingly, if the petitioner made the request in a timely manner, as the respondent concedes he did, then the statute of limitations was tolled through January 7, 2021 — the date the Court of Appeals denied the application for a certificate of appealability. *See Clemente*, 72 F.4th at 477; *Allen v. Artus*, No. 17-CV-6074, 2020 WL 6785498, at *10 (W.D.N.Y. Nov. 18, 2020) (tolling the limitations period from the date petitioner filed the *coram*

*nobis* motion through the Court of Appeals' denial of petitioner's application for leave to appeal the Appellate Division's denial).[6]

Indeed, the respondent concedes that the limitations period was tolled from November 13, 2019 through January 7, 2021 — from the time the petitioner filed his petition for a writ of error until the Court of Appeals denied the application for a certificate of appealability. (ECF No. 12-1 at 7–8.)

### ii. The § 440.10 motion to vacate judgment

The petitioner filed a *pro se* 440.10 motion on January 18, 2021, 11 days after the Court of Appeals denied his request for a certificate of appealability. (SR at 185.)[7] On January 20, 2022, the New York Supreme Court denied the motion (*id.* at 306–09), and the respondent served the petitioner with the court's order by mail the next day (*id.* at 384). The petitioner then had 30 days to appeal the decision. *See* N.Y. Crim. Proc. Law §§ 450.15(1), 460.10(1). The limitations period was tolled for the whole time the motion was pending and resumed on "the date on which [the petitioner's] time to seek a discretionary appeal in the Appellate Division expired." *Clemente*, 72 F.4th at 476.

Accordingly, the statutory limitations period started to run again on February 21, 2022.[8] The petitioner then had 298 days to file a timely habeas petition — that is, by December 16, 2022. He did not file this petition until July 19, 2023, about seven months after the limitations period expired.

---

[6] Although the respondent claimed in the New York Court of Appeals that the petitioner's request for a certificate of appealability was untimely, it now concedes that the limitations period was tolled until January 7, 2021.

[7] The Court construes the petition to raise the strongest arguments it suggests, and assumes that the petitioner properly filed the § 440 motion on January 18, 2021.

[8] Where the 30-day period ends on a weekend, the limitations period begins running again on business day. *See* N.Y. Gen. Constr. Law § 25-a(1).

### b.  Expiration of AEDPA's Statute of Limitations

The petitioner filed two more applications for leave to appeal in the state courts, but neither of these applications tolled the limitations period because they were not "pending" or "properly filed" on or before December 16, 2022, when the statute of limitations expired. *See Artuz*, 531 U.S. at 10–11; *Adeline*, 206 F.3d at 253.

First, on April 19, 2023, the petitioner applied to the Appellate Division for leave to appeal the trial court's denial of his §440.10 motion. (SR at 310.)  He made this application 422 days late under New York law. *See* N.Y. Crim. Proc. Law §§ 450.15(1), 460.10(1).  Since he did not appeal by February 21, 2022, the § 440.10 motion was no longer "pending," and the AEDPA statute of limitations resumed running on that date. *Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009) ("[A] § 440.10 motion is 'pending' for purposes of AEDPA at least from the time it is filed through the time in which the petitioner could file an application for a certificate for leave to appeal the Appellate Division's denial of the motion.") (internal citation omitted); *see also Clemente*, 72 F.4th at 476; N.Y. Crim. Proc. Law §§ 450.15(1), 460.10(1).  Under state law, the petitioner's appeal was untimely and therefore not "properly filed." *See Allen*, 552 U.S. at 6 (quoting *Pace*, 544 U.S. at 417) (affirming that "statutes of limitations are 'filing' conditions because they go to the very initiation of a petition and a court's ability to consider that petition . . . . Thus, . . . time limits, *no matter their form*, are 'filing' conditions, and … a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely." (alterations adopted) (internal citation omitted)).

On June 30, 2023, the petitioner applied to the Court of Appeals for leave to appeal the Appellate Division's denial of his application. (SR at 393.)  However, "[u]nder N.Y. Crim. Pro. Law § 450.90, no appeal to the New York Court of Appeals lies from an Appellate Division order denying a motion for leave to appeal a trial court's denial of a CPL § 440.10 motion."

12

*Rose v. Lee*, No. 13-CV-299, 2015 WL 729817, at *5 (N.D.N.Y. Feb. 19, 2015) (internal citation omitted) (collecting cases). Accordingly, in addition to being untimely under AEDPA's statute of limitations, the petitioner's June 30, 2023 application was not a properly-filed application for post-conviction relief. *See Rodriguez v. Miller*, No. 24-CV-2715, 2025 WL 724771, at *5 (S.D.N.Y. Feb. 7, 2025), *report and recommendation adopted*, 2025 WL 723012 (S.D.N.Y. Mar. 6, 2025); *Walker v. Graham*, 955 F. Supp. 2d 92, 102 (E.D.N.Y. 2013).

In short, these state court filings do not affect the AEDPA limitations period, which expired on December 16, 2022.

\*   \*   \*

For the reasons detailed above, AEDPA's statute of limitations on each of the petitioner's claims expired December 16, 2022, eight months before the petitioner filed his petition for a writ of habeas corpus on July 19, 2023. Accordingly, the petitioner's request for habeas relief is untimely.

### III.   Equitable Tolling

Anticipating that his petition might be untimely, the petitioner asks the Court to grant him "extraordinary relief" and find that he is entitled to equitable tolling because his attorneys "did[n']t advise" him about the statute of limitations; this "negligence" was an "extraordinary circumstance." (ECF No. 1 at 13–14.) The petitioner is not entitled to equitable tolling.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances, but should be applied only in 'rare and exceptional circumstances." *Clemente*, 72 F.4th at 478 (quoting *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000)) (internal quotations omitted). A court may equitably toll the AEDPA statute of limitations only if the petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

13

timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citations omitted). The Second Circuit has "set a high bar" for circumstances to qualify as extraordinary; the question is "how severe an obstacle [the allegedly extraordinary circumstance] is for the prisoner endeavoring to comply with AEDPA's limitations period." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (quoting *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)).

The petitioner cites *Nickels v. Conway*, 480 F. App'x 54 (2d Cir. 2012). There, Nickels directed his lawyers to file a habeas petition; they did not file the petition, although they repeatedly promised that they would. *Id.* at 56. However, counsel explained that while AEDPA's limitations period was important, it was more important to continue working on the petition to "leave no stone uncovered." *Id.* The Second Circuit found that Nickels was entitled to equitable tolling, because counsel's misrepresentation was "so outrageous or so incompetent as to render it extraordinary" and "highly prejudicial to habeas petitioners." *Id.* (internal citations and quotations omitted).

*Nickels* is distinguishable. The petitioner filed this petition and all his post-judgment petitions *pro se*, offered no evidence of extraordinary attorney negligence, and did not establish that counsel's advice — or lack of advice — had anything to do with his delay in filing this petition.[9]

Nor does the fact that the petitioner is proceeding *pro se* entitle him to equitable tolling. "[I]t is well-settled that a mistake or lack of legal knowledge is not an excuse under the law, and any equitable tolling argument arising therefrom is without merit." *Swanton v. Graham*, No. 07-

---

[9] To the extent that the petitioner's lawyers did not advise him of the AEDPA statute of limitations — and there is nothing in the record about this one way or the other — any erroneous advice on that point is a "garden variety claim of excusable neglect" and does not warrant equitable tolling under these circumstances. *Clemente*, 72 F.4th at 478 (collecting cases). Indeed, the state courts rejected the petitioner's claims that his counsel was ineffective. (*See, e.g.*, SR at 306–09.)

14

CV-4113, 2009 WL 1406969, at *5 (E.D.N.Y. May 19, 2009) (collecting cases); *see also Ayala v. Miller*, No. 03-CV-3289, 2004 WL 2126966, at *2 (E.D.N.Y. Sept. 24, 2004) ("Neither a prisoner's pro se status, nor his lack of legal expertise, provides a basis for equitable tolling of AEDPA's statute of limitations." (citing *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000))).

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus is denied and the case is dismissed.  A certificate of appealability will not be issued.  *See* 28 U.S.C. § 2553(c).  The Clerk of Court is respectfully directed to enter judgment accordingly.

**SO ORDERED.**

                                                                             s/Ann M. Donnelly
                                                          ANN M. DONNELLY
                                                          United States District Judge

Dated: Brooklyn, New York
         August 21, 2025