UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
**OTIS UTLEY**,                                              :
                                                             :
               Petitioner,      :
                                                             :  **MEMORANDUM AND ORDER**
        – against –                                 :  23-CV-6022 (AMD)
                                                             :
**WARDEN MARK MILLER**,                                      :
                                                             :
               Respondent.      :
                                                             :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

Before the Court is the *pro se* petitioner's motion for reconsideration of the Court's August 21, 2025 Memorandum Decision and Order (ECF No. 14), denying the petition for a writ of habeas corpus. For the following reasons, the petitioner's motion is denied.

## BACKGROUND[1]

On June 1, 2016, the petitioner was convicted after a jury trial of first- and second-degree robbery. (ECF No. 13-1, Trial Transcript ("Trial Tr.") 464, 546:9–550:15.) He appealed his conviction to the Appellate Division, Second Department, which affirmed the conviction on March 6, 2019. (*See* ECF No. 13, State Record ("SR") at 1–45, 106–07.) On June 20, 2019, the New York Court of Appeals denied the petitioner's application for leave to appeal. (*Id.* at 115.)

The petitioner moved *pro se* for a writ of error *coram nobis* in the Appellate Division, Second Department, on November 13, 2019. (*Id.* at 116–51.) On September 30, 2020, the

---

[1] The Court assumes familiarity with the background of this case, which is detailed in the Order, and will not be repeated except as necessary to explain the basis for the Court's decision.

Appellate Division denied that motion, and on January 7, 2021, the Court of Appeals denied the petitioner's application for leave to appeal. (*Id.* at 174, 184.)

On January 18, 2021, the petitioner moved to vacate the trial court's judgment pursuant to New York Criminal Procedure Law § 440.10, and filed an addendum to that motion on February 20, 2021. (*Id.* at 185–98, 265–71.) On January 20, 2022, the court denied the § 440 motion on procedural grounds and on the merits. (*Id.* at 306–312.) The respondent mailed the court's order to the petitioner on January 21, 2022. (*Id.* at 384.)

On April 19, 2023, the petitioner applied to the Appellate Division, Second Department for leave to appeal the January 20, 2022 denial of his motion to vacate the judgment. (*Id.* at 310–18.) On June 9, 2023, the Appellate Division denied the petitioner's application. (*Id.* at 392.) On June 30, 2023, the petitioner applied for leave to appeal to the Court of Appeal, which the Court of Appeals denied on September 29, 2023. (*Id.* at 396–98.)

On July 19, 2023, the petitioner filed a petition for habeas corpus. (ECF No. 1.) The Court ordered the respondent to file a limited answer to the petition, addressing the timeliness of the petition under 28 U.S.C. § 2244(d). (ECF No. 7.) The respondent filed its response on January 25, 2024, claiming that the petition was untimely and barred by the applicable statute of limitations. (ECF No. 12.) The petitioner did not respond, although the Court gave him the opportunity to do so.

On August 21, 2025, the Court issued a memorandum decision and order, denying the petition as untimely under the one-year limitations period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (ECF No. 14.) *See also* 28 U.S.C. § 2244(d)(1). The Court calculated the tolling and lapsing of the limitations period in detail. First, the Court explained that the judgment became final, and the limitations period began to run on

September 18, 2019.  (ECF No. 14 at 7–8.)  The limitations period ran for 56 days before it was tolled on November 13, 2019, when the petitioner filed his *coram nobis* motion.  (*Id.* at 10–11.)  The limitations period ran for another 11 days between January 7, 2021, when the *coram nobis* proceeding concluded, and January 18, 2021, when the petitioner filed his § 440.10 motion and tolled the limitations period once again.  (*Id.* at 11.)  The limitations period began to run again on February 21, 2022, 30 days after the respondent served the Queens County Supreme Court's decision denying the petitioner's § 440 motion — that is, after the petitioner's time to appeal the order expired.  (*Id.*)  The Court concluded that the petitioner then had 298 days, until December 16, 2022, to file a timely habeas petition.  (*Id.*)  The petitioner did not file this petition until July 19, 2023, and the Court therefore held that the petition was untimely.  (*Id.*)  The Court further observed that the petitioner's untimely applications for leave to appeal the trial court's denial of his § 440 motion — first to the Appellate Division and then the Court of Appeals — did not toll the statute of limitations.  (*Id.* at 12–13.)  Finally, the Court held that the petitioner was not entitled to equitable tolling.  (*Id.* at 13–15.)

On September 15, 2025, the petitioner filed a motion for reconsideration.  (ECF No. 16.)  He attached to this motion a September 5, 2025 response from the New York State Department of Corrections and Community Supervision's ("DOCCS") FOIL office, which included a mail log showing that the petitioner received mail from the "District Attorney Queens County" on June 29, 2022.  (*Id.* at 6–7.)  The respondent opposed the motion.  (ECF No. 17.)

## LEGAL STANDARD

The petitioner does not identify the basis of his current motion.  Because "the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest,'" *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (internal citation omitted), the Court evaluates the petitioner's motion pursuant to Rule

3

59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See Banister v. Davis*, 590 U.S. 504, 514–17, 518 n.7 (2020) (endorsing use of Rule 59(e) in habeas proceedings and noting that "a Rule 60(b) motion that attacks 'some defect in the integrity of the federal habeas proceedings'—like the mistaken application of a statute of limitations— . . . can proceed" (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005))); *Paredes v. United States*, No. 10-CV-5498, 2011 WL 837139, at *1 (E.D.N.Y. Mar. 2, 2011) (considering *pro se* petitioner's motion for reconsideration under Rules 59(e) and 60(b)).

Under Rule 59, a party may file a motion to alter or amend a judgment no later than 28 days after the entry of the judgment. Fed. R. Civ. P. 59(e). "The Rule gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Banister*, 590 U.S. at 508 (quoting *White v. N.H. Dept. of Emp. Sec.*, 455 U.S. 445, 450 (1982)). "A motion for reconsideration should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." *McAnaney v. Astoria Fin. Corp.*, 233 F.R.D. 285, 287 (E.D.N.Y. 2005) (internal citation omitted). "Reconsideration may also be granted to "correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d

Cir. 1998); *see also Banister*, 590 U.S. at 508 ("[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued.").

A party may also move for reconsideration of an order under Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) allows the Court to relieve a party from a final judgment in certain circumstances — for example, if the judgment was procured by fraud, if new evidence has surfaced that could not have been discovered earlier with reasonable diligence, or if "any other reason . . . justifies relief." Fed. R. Civ. Pro. 60(b); *Gonzalez*, 545 U.S. at 528. However, "[s]ince 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances" (internal quotations omitted)). Thus, "[a] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." *Maldonado v. Local 803 I.B. of Tr. Health & Welfare Fund*, 490 F. App'x 405, 406 (2d Cir. 2013).

## DISCUSSION

The petitioner asks the Court to reconsider its decision to dismiss the petition based on the DOCCS' FOIL production. He asserts that that the FOIL production shows that he did not receive the Queens County Supreme Court order, dated January 20, 2022, denying his § 440 motion until June 29, 2022. (ECF No. 16 at 2, 7.) He maintains that this five-month delay entitles him to equitable tolling, because he could not file a timely appeal of that decision. (*Id.* at 2.)

The respondent argues that the DOCCS document does not prove that the petitioner received the January 2022 order in June, because the log does not describe the content of the mail and because the petitioner does not offer the mail log from late-January 2020. (ECF No. 17

at 4). In any event, the respondent says, the relevant date for statutory tolling under AEDPA and New York Law is the date when the respondent mailed the order — January 21, 2022 — not when the petitioner received it. (*Id.* at 4–5.) Moreover, the respondent maintains that even if the petitioner were entitled to equitable tolling, the tolling period would only extend through June 29, 2022; and the petition would still be untimely. (*Id.* at 5.)

The Court accepts the petitioner's claim that he did not receive the trial court's January 2022 order before June 29, 2022. The Court does not know what mail other than the January 2022 order the petitioner might have received from the respondent in June 2022. In fact, that order was the then-most-recent filing in the petitioner's case. Nor has the respondent offered any explanation or evidence of its own. Given that "[t]he AEDPA statute of limitation is . . . an affirmative defense" for which the respondent bears the burden, *Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000), the Court accepts the petitioner's allegation that the mail he received from the respondent in June included the January 2022 order and that he had not received it before then. At the very least, the Court considers whether the evidence from DOCCS would change its ultimate determination.

The next question is whether the order was served — and the petitioner's 30-day deadline to appeal was triggered — when the respondent mailed it in January or when the petition the petitioner received it in June. The respondent says that, in this case, "New York law provides that service by mail is complete upon the deposit of a properly stamped and addressed letter" with USPS. (ECF No. 17 at 4.) But the cases on which the respondent relies are distinguishable and the proposition is far from clear.

The respondent first claims that New York courts apply the CPLR's service rules in criminal cases where there are no applicable provisions of the CPL. (*Id.*) The respondent cites

6

*People v. Ellington*, 954 N.Y.S.2d 760 (Bx. Sup. Ct. 2012), in which the court determined that service of motion papers consistent with the relevant CPLR provision satisfied the service requirement in a CPL provision governing discovery motions. The court cited three trial court cases, which followed the same rule. *Id.* However, the court also noted that there was precedent holding that the CPLR does not apply to criminal actions at all. *Id.* n. 1 (quoting *People v. Silva*, 122 A.D.2d 750 (1st Dep't. 1986)).

Indeed, that is where the weight of the precedent lies. In *People v. Silva*, 122 A.D.2d 750 (1st Dep't. 1986), the First Department held that "the CPLR has no application to criminal actions and proceedings." The First Department reached the same conclusion in *People v. Crisp*, holding that a notice of the defendant's request to testify in the grand jury under CPL § 190.50(5)(a) was "served" not upon mailing, but "only when it is received" by the prosecutor. *People v. Crisp*, 246 A.D.2d 84, 86 (1998), *adhered to on reargument,* 268 A.D.2d 247 (2000). The court reasoned that "the notice of intent to testify should be deemed timely served only if the People actually receive it before the filing of the indictment since the receipt of such notice triggers reciprocal obligations on the prosecutor's part that cannot be fulfilled without actual notice of such intent." *Id.* The court adhered to the decision after reargument in which the defendant insisted that the CPLR service rules should apply, and that service was thus complete when the notice was mailed. *Crisp*, 268 A.D.2d at 247. The court rejected this argument, explaining that CPLR provisions are inapplicable in criminal proceeding "especially . . . in the absence of any express reference to the CPLR in [the relevant CPL provision] and in view of the Court of Appeals' practice of interpreting CPL provisions in accordance with the CPL's statutory scheme and without resort to the CPLR." *Id.* (citing *People v. Coaye*, 68 N.Y.2d 857, 858 n. (1986)); *see also People v. Lamont*, 144 A.D.3d 1330, 1331 (3d Dep't 2016) ("It is axiomatic

7

that the CPLR governs in civil proceedings (*see* CPLR 101, 105(d));, and the CPL governs in criminal actions (*see* CPL 1.10 (1)(a))."); *People v. Manupelli*, 877 N.Y.S.2d 599, 600 (App. Term, 9th and 10th Jud. Dists. 2008) ("With rare exceptions (*e.g.* CPL 60.10), the CPLR is inapplicable to criminal proceedings." (citing CPLR 101; CPL 1.10 (1)) (collecting cases)); *People v. Knobel*, 94 N.Y.2d 226, 230 (1999) ("refus[ing] to read" a CPLR requirement for tolling into a CPL provision).

      The same reasoning applies here, where the petitioner's time to appeal is trigged by the service of the order and the CPL provision at issue does not refer to the CPLR. *See* CPL §§ 450.15(1); CPL 460.10(4)(a) (appeal of trial court's denial of 440.10 motion must be made "[w]ithin thirty days after service upon the defendant of a copy of the order sought to be appealed"). The defendant, who was incarcerated and proceeding *pro se* when the trial court denied his CPL § 440 motion, could not have known that his time to appeal began to run before he received the order. *See also Cobb v. Lee*, No. 14-CV-2442, 2022 WL 900570, at *3 (E.D.N.Y. Mar. 28, 2022) ("The 30-day period [in which to file an appeal] began on [the date] when petitioner received the order denying his second § 440 motion."). Accordingly, the petitioner's time to appeal started to run from the time he received the January 2022 order on June 29, 2022, and the statute of limitations remained tolled until July 29, 2022, when the petitioner's deadline to appeal expired. *See Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009) ("[A] § 440.10 motion is 'pending' for purposes of AEDPA at least from the time it is filed through the time in which the petitioner could file an application for a certificate for leave to appeal the Appellate Division's denial of the motion.") (internal citation omitted). As discussed above, the petitioner then had 298 — or until May 23, 2023 — to file his habeas petition.

Even under these circumstances, however, the petitioner's habeas petition was still untimely. He did not move to appeal the § 440 decision until April 19, 2023 — 264 days after the statutory deadline. As the Court explained in the August Order, because that request was untimely, it was not "properly filed" and did not toll the limitations period. (ECF No. 14 at 12 (quoting *Allen v. Siebert*, 552 U.S. 3, 6 (2007)).) The same is true as to the petitioner's June 30, 2023, application to the Court of Appeals for leave to appeal the Appellate Division's denial of his application, because that is not an appealable order. (*Id.* at 12–13.) Therefore, the AEDPA limitations period expired on May 23, 2023, and the petitioner's habeas petition, filed 57 days late on July 19, 2023, is untimely.

Nor does the Court find any reason to reconsider its decision that the petitioner is not entitled to equitable tolling for the 57 days that would make his petition timely. He offers no new arguments or evidence that he confronted an "extraordinary circumstance" that "prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation and citation omitted).

## CONCLUSION

For these reasons, the petitioner's motion for reconsideration is denied.

**SO ORDERED.**

                                                          s/Ann M. Donnelly
                                                          ANN M. DONNELLY
                                                          United States District Judge

Dated: Brooklyn, New York
          October 10, 2025